Barbour, Ch. J. (dissenting).
This is an appeal from an.order at Special Term denying a motion for a new trial upon a case and exceptions, which motion was made after a j udgment had been entered in favor „ *9 of the defendants, and after the time of appealing therefrom had expired.
Upon the motion, helow, and at the hearing here, it was claimed by the counsel for the defendants, that a motion for a new trial upon a case and exceptions merely, and not embracing affidavits showing' fraud, surprise, or newly discovered evidence, could not properly be entertained after a judgment had been entered, or, at most, not after the losing party had, by his laches, lost his right of appealing from such judgment.
The action was-for negligence in causing the death of H. L. Luddington. Evidence was given upon the trial sufficient to prove, if credited by the jury, that the defendants were the lessees or proprietors and occupants of a large warehouse in this city, which was used by them in their business of storing goods, under and in accordance with the following provisions of an act of Congress passed March 28, 1854, and the succeeding regulations of the Secretary of the Treasury:
T. United States law of March 28, 1854:
“§ 1. Groods subject to duty may be" stored in a private warehouse, provided that such private warehouse shall be used solely for the purpose of storing warehoused goods, and shall have been previously approved by the secretary of the treasury, and have been placed in charge of a proper officer of the customs, who, together with the owner and proprietor of the warehouse, shall have joint custody of all the merchandise stored in said warehouse, and all the labor on the goods so stored must be performed by the owner or proprietor of the warehouse, under the supervision of the officer of the customs in charge of the same, at the expense of the aforesaid owner or proprietor.
“2. Regulations by the Secretary of the Treasury:
“Application to constitute a private bonded warehouse must be accompanied by a certificate of two or more-in *10 surance companies that the building is a first-class fireproof store. The collector thereupon to direct the superintendent of warehouses to examine the premises, and report to him, in writing, all the material facts as to the location, construction and dimensions of the store, and means of securing merchandise, etc., which report is to be transmitted by the collector with the certificate of the insurance companies; and his own views, to the secretary of the treasury, whereupon the application may be granted upon the proprietor giving the. prescribed bond. Stores of class 2 and. 3 must, previous to their being used for the storage of merchandise, be provided with such fastenings on the doors and windows as the collector may deem requisite for the security of the property. The store must be separated from the. adjoining buildings by a brick or stone wall, in which no door or other opening will be permitted. An office for the accommodation of the proprietor will be allowed in these stores, but such office must be separated by a permanent partition from the rest of the store, so that the proprietor shall have no access to the goods, except in the presence of the officer, who must be allowed such use of the office as may be necessary for him in making his daily returns, receipts and examinations.
“3. Duties of store-keepers. Regulations by the Secretary of the Treasury :
“All bonded stores, as well as the stores occupied by ' the appraisers, are placed by the collector in the custody of officers designated for the purpose, who are known as store-keepers and assistant store-keepers. The storekeeper is required to keep the keys of the store in his own possession, and personally superintend the opening and closing of the doors and windows. Both he and the assistant store-keeper, if there is one, are required to be in constant attendance at the stores while they are open.
“Store-keepers will not suffer any goods to be re *11 ceived, delivered, sampled, packed or repacked, except in their presence, or in the presence of the assistant store-keeper.
“No fire will be permitted in any bonded warehouse, except in the business office attached thereto, and when lights are required lanterns must be used.”
At the time of the accident complained of, Mr. Luddington was an officer of the customs in charge of the premises and goods therein, and had so been employed there for about one week. The warehouse was three or four stories in height, about fifty feet in width, and two hundred long. Near the centre of it was a hatchway, extending prom the upper loft to the cellar, which was at times clo& -d by trap-doors or hatches on each floor, and at other times opened for hoisting or lowering goods, and it was often quite dark there. Between the piles of goods on the first floor, there was a passage-way from the front to the rear of the store, some four feet in width, leading over the hatch when closed, and around it when open. On the day in question, Mr. Luddington, who was near eighty years old, had occasion to go from the front of the building to the water-closet in the rear, when, owing to his imperfect vision, insufficient light there, his own want of care, or some other cause, he walked or fell through the hatchway which was then open, into the cellar, and thereby lost his life.
It is unnecessary to enquire whether the regulations of the Secretary of the Treasury attempt to confer upon custom-house officers, who are placed in charge of these private warehouses greater powers than are authorized by the statute or not. It is enough to say that neither those regulations nor the law attempts to give to those officers any supervision over the hatches or hatchways. They are subject to the sole control and management of the warehouseman who stores the goods and receives pay therefor. Considering this, and in view of the foregoing facts, there can be no doubt that the jury *12 might, in their judgment and discretion, well have found that the accident was occasioned by the negligence of the defendants, and that there was no want of proper care on the part of Mr. Luddington, which contributed thereto, and it follows that the court erred in refusing to submit those questions to them, and in dismissing the complaint.
But, although the plaintiffs might have been entitled to a reversal of the judgment against them, because of that error, had they appealed therefrom, and, of course to a new trial, it by no means follows that an order for a new trial can properly be made upon a motion founded upon a case and exceptions, merely after a judgment has been entered and the time for appealing therefrom has expired.
Subsequent to the adoption of the Code and up to the announcement of the decision of the court of appeals in Tracey v. Altmayer, (46 N. Y. 598,) the weight of authority was, undoubtedly, against the right of a party to move for a new trial after a judgment had been-entered against him. In that case the motion at Special Term for a new trial was based upon the ground of surprise and newly discovered evidence, and was made after the entry of judgment upon a verdict. The court of appeals held that an act passed by the legislature in 1832 (L. of 1832 p. 188) was still in force, and that such act empowered the court at Special Term to grant motions for new trials after judgment, entered by the clerk upon a verdict. That act, however, it appears to me, does not authorize motions for new trials upon case and exceptions after judgments have been entered by direction of the court upon the trial. Be that as it may, however, neither the decision in question, nor any other, so far as I can discover from a careful examination of the books, determines that a motion for a new trial, founded upon a case and exceptions alone, can properly be made after a judgment has been entered, not only, but even aftez *13 the time for appealing from such judgment has expired. Such a practice, indeed, if generally adopted, would be most unsafe and dangerous, as well as contrary to the well established principle, that a judgment regularly obtained in an action, in which both parties have respectively had a fair and full hearing upon the merits, must be considered as the final end of the litigation, unless appealed from within the period limited by the statute. A judgment thus obtained, and, by a failure to appeal, acquiesced in, becomes vested and absolute in so far as that action is concerned; and that was, no doubt, contemplated by the legislature in adopting the 345th section of the Code, which declares that “a judgment is the final determination of the rights of the parties in the action,” and those provisions which so absolutely limit the period within which appeals may be brought, that such time cannot be enlarged or extended by any subterfuge or evasion whatever.
In the case before us the appellant endeavored in effect to evade, by means of a motion for a new trial, the force of the statute which limits the time within which appeals maybe brought, and of the numerous decisions upon that subject, and if he eventually succeeds in establishing the rule that orders for new trials may as well be made after the period for appealing has passed away as before that time, expensive appeals from judgments will in many if not most cases be dispensed with hereafter, as the party aggrieved may, at a comparatively small cost, obtain what in effect would be a reversal of the judgment by means of an order at Special Term for a new trial; and that, too, perhaps, years after notice of the recovery of the judgment had been served upon him. It is obvious that the intention of the legislature in regard to the limitation of time within which appeals must betaken to secure a review of the judgment and proceedings cannot thus be defeated. Without expressing an opinion as to whether motions after judgment for a new *14 trial can properly Tbe made in any case not expressly provided for in the act of 1832, it is sufficient to say that the motion for a new trial in the case before us ought to have been denied for the reason that it was not made until the time for appealing from the judgment had expired.
The order appealed from should be affirmed, with costs.